IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | Case No. 7:13-cr-00082 | |
| v. | ) | | |
| | ) | | |
| CHOL MAKUACH DAU, | ) | By: | Michael F. Urbanski |
| Defendant. | ) | | United States District Judge |

## MEMORANDUM OPINION

Defendant Chol Makuach Dau is charged in a three count superseding indictment[1] with conspiracy and possession with intent to distribute various controlled substances and controlled substance analogues. In anticipation of trial,[2] the parties filed numerous motions that were addressed at a June 10, 2014 hearing. Two of those motions, Dkt. #s 42 and 64, concern defendant's knowledge as regards the charged offenses. The court took these motions under advisement pending issuance of a written opinion. The issues raised are addressed herein. For the reasons stated below, the government's motions in limine (Dkt. #s 42 & 64) will be **GRANTED**.

### I.

Congress enacted the Controlled Substance Analogue Enforcement Act of 1986, 21 U.S.C. §§ 802(32)(A), 813, "to prevent 'underground chemists' from creating new drugs that have similar effects on the human body as drugs explicitly prohibited under the federal drug laws." United States v. McFadden, 753 F.3d 432, 436 (4th Cir. 2014) (citing United States v. Klecker, 348 F.3d 69, 70 (4th Cir. 2003) and United States v. Hodge, 321 F.3d 429, 432 (3d Cir. 2003)). The Analogue Act treats a controlled substance analogue, to the extent it is intended for human consumption, as a schedule I

---

[1] This superseding indictment was handed down on July 24, 2014, after the hearing on the instant motions. The issues raised in these motions pertain to the charges alleged in the superseding indictment and remain ripe for adjudication.
[2] Trial was set to begin on June 16, 2014. At the parties' request, and in the interest of justice, trial has been continued until September 15, 2014.

controlled substance for purposes of federal law. 21 U.S.C. § 813. "Controlled substance analogue" is defined in § 802(32)(A) as a substance:

> (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
>
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
>
> (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

Thus, as the Fourth Circuit stated in McFadden:

> [A]n individual may be convicted for an offense involving a controlled substance analogue under 21 U.S.C. § 841 if the government establishes that: (1) the alleged analogue substance has a chemical structure that is substantially similar to the chemical structure of a controlled substance classified under Schedule I or Schedule II (*the chemical structure element*); (2) the alleged analogue substance has an actual, intended or claimed stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than such effect produced by a Schedule I or Schedule II controlled substance (*the pharmacological similarity element*); and (3) the analogue substance is intended for human consumption (*the human consumption element*). See Klecker, 348 F.3d at 71 (construing 21 U.S.C. §§ 802(32)(A), 813).

753 F.3d at 436.

In this case, Dau is charged in Count One (subsection (1)) of the superseding indictment with conspiracy to distribute and possess with intent to distribute various controlled substance analogues, and in Count One (subsection (2)) with conspiracy to distribute and possess with intent to distribute a schedule I controlled substance. Count Two charges Dau with possession with the intent to distribute various controlled substance analogues, and Count Three charges possession

2

with the intent to distribute a schedule I controlled substance. The two pending motions in limine concern the mens rea required to prove the Analogue Act violations charged in Counts One (subsection (1)) and Two.

## II.

### A.

In its first motion in limine, the government asks the court to preclude Dau from arguing at trial that he did not know it was illegal to distribute the controlled substance analogues charged in the indictment (Dkt. # 42). Argument along these lines, according to the government, would be tantamount to a mistake or ignorance of the law defense, neither of which is a permissible defense to the federal drug crimes charged here. To be sure, "'[t]he general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system.'" United States v. Fuller, 162 F.3d 256, 262 (4th Cir. 1998) (quoting Cheek v. United States, 498 U.S. 192, 199 (1991), and citing United States v. Wilson, 133 F.3d 251, 261 (4th Cir. 1997)). Knowledge of the law is not an element of the charged offenses, and the government need not prove that Dau knew his conduct was illegal. In this regard, the government's motion in limine will be granted.

### B.

The second half of the government's motion (Dkt. # 42) concerns Dau's knowledge that the charged substances were controlled substance analogues. The government argues proof of such knowledge is not required to secure an Analogue Act conviction, citing the Fourth Circuit's decision in United States v. Klecker, 348 F.3d 69 (4th Cir. 2003). Klecker involved a challenge to the Analogue Act on vagueness grounds. The Fourth Circuit articulated the elements of an Analogue Act offense as follows:

> In order to show an Analogue Act violation, the Government must prove (1) substantial *chemical* similarity between the alleged analogue

3

> and a controlled substance, see 21 U.S.C.A. § 802(32)(A)(i); (2) actual, intended, or claimed *physiological* similarity (in other words, that the alleged analogue has effects similar to those of a controlled substance or that the defendant intended or represented that the substance would have such effects), see id. § 802(32)(A)(ii), (iii); and (3) *intent* that the substance be consumed by humans, see id. § 813. Cf. Hodge, 321 F.3d at 436-39 (interpreting § 802(32)(A)).

348 F.3d at 71. In support of its knowledge argument, the government points to the following passage in Klecker:

> Finally, we note that the district court heard testimony that Klecker was actually aware that Foxy was a controlled substance analogue. Some courts have concluded that a defendant who had actual notice that his conduct was unlawful cannot prevail on a vagueness challenge. See, e.g., United States v. Washam, 312 F.3d 926, 930 (8th Cir. 2002); United States v. Pitt-Des Moines, Inc., 168 F.3d 976, 990 (7th Cir. 1999). We need not decide this question, however, because we conclude that the Analogue Act would not be unconstitutionally vague as applied to Foxy even with respect to a defendant who lacked actual notice.

348 F.3d at 72. Based on this language, the government contends Dau need not have actual knowledge that the substances at issue were drug analogues in order to be convicted of an Analogue Act offense. In response, Dau takes issue with the government's reliance on this dictum from Klecker, urging the court to look instead to the holding in United States v. Turcotte, 405 F.3d 515, 527 (7th Cir. 2005). See Def.'s Resp. Br., Dkt. # 46, at 2-3. In Turcotte, the Seventh Circuit held the government must prove a defendant's knowledge that a substance in question meets the definition of a controlled substance analogue set forth in 21 U.S.C. § 802(32)(A)—specifically, "[a] defendant must know that the substance at issue has a chemical structure substantially similar to that of a controlled substance, and he or she must either know that it has similar physiological effects or intend or represent that it has such effects." 405 F.3d at 528.

One week after the government filed its first motion in limine, the Fourth Circuit issued its opinion in United States v. McFadden, 753 F.3d 432 (4th Cir. 2014), shoring up the government's

4

argument[3] and prompting its second motion in limine (Dkt. # 64) on the issue of knowledge. McFadden expressly rejects the Seventh Circuit's holding in Turcotte and Dau's theory that the government is required to prove Dau knew the substances in question were controlled substance analogues. In McFadden, the Fourth Circuit reiterated what it said in Klecker concerning what is necessary to establish a violation of the Analogue Act:

> In Klecker, we set forth the elements that the government was required to prove to obtain a conviction under the Act, including the scienter requirement that the defendant intended that the substance at issue be consumed by humans. 348 F.3d at 71. We further stated that the Act may be applied to a defendant who lacks actual notice that the substance at issue could be a controlled substance analogue. Id. at 72.

753 F.3d at 444. The court upheld the district court's rejection of McFadden's proposed jury instruction that was based on the holding in Turcotte and would have required the government to prove that defendant knew, had a strong suspicion, or deliberately avoided knowledge that the substances at issue possessed the characteristics of controlled substance analogues. Id. at 443. McFadden held that Klecker defines the law in this Circuit and does not impose the same "strict knowledge requirement" that the Seventh Circuit does. 753 F.3d at 444. In light of this ruling from the Fourth Circuit, the government asks the court to preclude Dau from offering evidence or argument that the government is required to show Dau knew the substances at issue were controlled substance analogues, and further asks that the jury be instructed accordingly. Gov't Second Mot. in Limine, Dkt. # 64, at 3-4.

For his part, Dau acknowledges that McFadden "address[es] at least some of the issues raised by the parties with respect to the government's [] Motion in Limine," but Dau disagrees with the Fourth Circuit's analysis. Def.'s Suppl. Resp. Br., Dkt. # 54, at 1. At the June 10th hearing, Dau

---

[3] McFadden was issued on May 21, 2014, the day after Dau filed his brief in response to the government's first motion in limine. Pursuant to Rule 3.3(a)(3) of the Virginia Rules of Professional Conduct, defense counsel provided the court with a copy of the Fourth Circuit's opinion. See Dkt. # 54.

5

argued that the government's reading of McFadden takes mens rea out of the statute and cannot be squared with the elements of conspiracy under 21 U.S.C. § 846. Dau questions how the government can prove he took part in an agreement to violate the drug laws if he did not know the substance at issue was a controlled substance analogue.

Regardless of whether Dau agrees with the Fourth Circuit's reasoning, its decision in McFadden, set forth in a published opinion, is binding precedent on this court. McFadden expressly states a defendant's knowledge that a substance in question possesses the characteristics of a controlled substance analogue is not required to secure a conviction. Dau insists this holding cuts mens rea out of the statute completely. On the contrary, the Fourth Circuit makes plain that there is a scienter requirement for Analogue Act violations, and it is "that the defendant intended that the substance at issue be consumed by humans." McFadden, 753 F.3d at 444 (citing Klecker, 348 F.3d at 71). This makes sense in the context of the Analogue Act—only when these substances are intended for human consumption is criminal liability imposed. See 21 U.S.C. § 813. Moreover, the defendant in McFadden, like Dau, was charged with conspiracy to distribute controlled substance analogues. 753 F.3d at 437, 437 n.3. Plainly, the Fourth Circuit's holding applies to conspiracy charges involving drug analogues.

McFadden makes clear that in an Analogue Act prosecution, a defendant's knowledge that a substance possesses the characteristics of a controlled substance analogue is not a prerequisite for conviction. To that extent, the government's motions in limine will be granted.

### C.

There is, however, a more nuanced issue not directly addressed in McFadden—whether the knowledge requirement applicable to § 841 offenses also applies to drug analogue violations. Section 841 makes it unlawful for any person knowingly or intentionally to distribute a controlled substance. In order to convict a defendant of distribution under § 841(a), the government must

6

prove that: (1) the defendant knowingly or intentionally distributed the controlled substance alleged in the indictment, and (2) at the time of such distribution, the defendant knew that the substance distributed was a controlled substance under the law. United States v. Tran Tuong Cuong, 18 F.3d 1132, 1137 (4th Cir. 1994). The government does not have to prove the defendant's knowledge with regard to the exact nature of a controlled substance, just that it was controlled under the federal drug laws. United States v. Brower, 336 F.3d 274, 277 (4th Cir. 2003).

The Analogue Act requires that a drug analogue be treated as a controlled substance in schedule I to the extent it is intended for human consumption. 21 U.S.C. § 813. At least one court has taken this to mean that the requisite elements of a controlled substance offense charged under § 841(a) must also be proved in a drug analogue case. In United States v. Roberts, 363 F.3d 118 (2d Cir. 2004), the Second Circuit considered a vagueness challenge to the definition of "controlled substance analogue," 21 U.S.C. § 802(32)(A), as applied to the substance 1,4-butanediol. The court stated it viewed the vagueness challenge to the Analogue Act with skepticism "[b]ecause the statute at issue [] contains a scienter requirement, see 21 U.S.C. § 841(a) . . . ." In a footnote, the court further explained its understanding of the elements necessary to prove the Analogue Act offense charged:

> Under the statutory scheme here, the defendants cannot be convicted unless a jury concludes beyond a reasonable doubt that (1) they possessed 1,4-butanediol, (2) which was similar in structure and effect to a listed controlled substance, (3) which was intended for human consumption (bringing it within the definition of a controlled substance), (4) with the intent to distribute it, and (5) they did so with the knowledge that they were in possession of a controlled substance. 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1). The last element requires the Government to show that the defendants knew that they possessed a controlled substance, not that they "might be involved in some sort of criminal activity." United States v. Morales, 577 F.2d 769, 773 (2d Cir. 1978). The defendants, however, need not know the exact nature of the drug; it is sufficient that they be aware that they possessed "some controlled substance." Id. at 776.

7

363 F.3d at 123 n.1. Thus, according to Roberts, the elements of a controlled substance offense charged under § 841(a) must be proved in a drug analogue prosecution.

The problem with this approach, however, is that one of those elements, that defendant know the substance in question is a controlled substance, cannot seamlessly be applied to offenses charged under the Analogue Act. The government cannot be required to prove a defendant's knowledge that a substance is a controlled substance when, by definition, it is not a controlled substance—it is a controlled substance analogue. Section 802(6) defines "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of this subchapter." Drug analogues are not included on the schedules of controlled substances.[4] Rather, they are substances that have chemical structures substantially similar to those of schedule I or II controlled substances, and actual, intended, or claimed effects on the central nervous system substantially similar to or greater than the effects of a schedule I or schedule II controlled substance. And, when intended for human consumption, these substances are "treated, for the purposes of any Federal law as a controlled substance in schedule I." 21 U.S.C. § 813. Simply because Congress directs courts to treat these substances as schedule I controlled substances does not mean they *are* controlled substances, however. They are not. In fact, the definition of "controlled substance analogue" expressly states that the "term does not include a controlled substance." 21 U.S.C. § 802(32)(C)(i). How then can the court require the government to prove for the alleged Analogue Act offenses that Dau knew he was in possession of or distributed controlled substances when the substances charged are not, by their very nature, controlled substances?

The court concludes it cannot. The Fourth Circuit has now twice articulated what is required to prove an Analogue Act offense and did not mention knowledge of a charged substance's

---

[4] This is the very reason the Analogue Act exists. As the court noted in McFadden, "[g]iven the creativity of individuals manufacturing these analogue substances, there is genuine potential that the creation of such substances could outpace any efforts by authorities to identify and catalog them." 753 F.3d at 441 (internal citation omitted).

8

characteristics.  See McFadden, 753 F.3d at 436, Klecker, 348 F.3d at 71.  McFadden expressly held that in a drug analogue prosecution, the government need not prove defendant's knowledge that an alleged substance is a controlled substance analogue.  Nor must the government prove defendant's knowledge that the substance is a controlled substance; such a requirement simply makes no sense in the context of the Analogue Act.

At the same time, however, the court does not consider McFadden to eliminate the knowing or intentional element of the distribution and possession crimes proscribed in § 841(a).  Indeed, the court stated:

> For ease of review, we restate the elements of the distribution offenses for which McFadden was convicted.  *In addition to proving that McFadden distributed the substances at issue*, the government was required to prove that those substances: (1) have a substantially similar chemical structure as a Schedule I or II controlled substance; (2) have a substantially similar or greater pharmacological effect on the human central nervous system as a Schedule I or II controlled substance, which effect was either actual, intended, or represented by the defendant; and (3) were intended by the defendant to be consumed by humans.  See Klecker, 348 F.3d at 71.

753 F.3d at 444-45 (emphasis added).  In other words, to secure a conviction for the drug analogue offenses charged in the superseding indictment, the government must prove that Dau knowingly or intentionally distributed (or possessed with intent to distribute, as the case may be) a substance that meets the requirements of the Analogue Act.  As the jury will be instructed, the well-accepted definition of "knowingly" requires the jury to find that the act in question was done voluntarily and intentionally and not by mistake or accident.  See United States v. Jones, 735 F.2d 785, 789 (4th Cir. 1984) (describing this as a "well-accepted definition of 'knowingly'" (citing E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 14.04 (3d ed. 1977)); see also United States v. Shrader, 675 F.3d 300, 309 (4th Cir. 2012) (describing this definition of "knowingly" as an accurate statement of the law).

9

## III.

In sum, the court concludes that for the drug analogue offenses alleged in Count One (subsection (1)) and Count Two of the superseding indictment, the government is not required to prove Dau's knowledge that the substances at issue possess the characteristics of a controlled substance analogue or were controlled substances. To that end, the jury will be instructed consistent with the Fourth Circuit's holdings in <u>McFadden</u> and <u>Klecker</u>. The government's motions in limine (Dkt. #s 42 & 64) concerning knowledge will be **GRANTED**.

An appropriate Order will be entered.

Entered: August 22, 2014

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge